Exhibit H

# STATE OF MICHIGAN

## IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM

### GENERAL TRIAL DIVISION

ATTORNEY GENERAL BILL SCHUETTE,

**OPINION AND ORDER
GRANTING DEFENDANTS'
MOTION FOR SUMMARY
DISPOSITION**

               Plaintiff,

Case No.: 11-538-CZ

v.

Hon. Paula J.M. Manderfield

MICHIGAN CIVIL SERVICE
COMMISSION and JEREMY STEPHENS,
in his official capacity as State
Personnel Director,

               Defendants.

_____/

      This action arises from Defendant Civil Service Commission's ("the CSC's") decision to extend health care benefits to certain adult co-residents of state employees and to the dependents of those adult co-residents. The Attorney General ("the AG") asserts in their two count Complaint: (I) that this decision exceeds the scope of the CSC's legislative authority under Art. 11 § 5 of the Michigan Constitution, and (II) that this policy violates the Equal Protection Clause of the Michigan Constitution. The policy to extend benefits to both bargaining unit employees and non-exclusively represented state employees is referred to as the OEAI Policy (Other Eligible Adult Individual).

      The Court finds, for the reasons stated herein, that the CSC's decision to extend eligibility for state health-plan benefits does not exceed the CSC's legislative authority and does not violate the Equal Protection Clause of the Michigan Constitution.

## STANDARD OF REVIEW

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmoving party.[1] A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery."[2] When deciding a motion brought under this section, a court considers only the pleadings.[3]

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers substantively admissible evidence actually proffered in the light most favorable to the party opposing the motion.[4] The movant has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence; the burden then shifts to the nonmovant to establish that a genuine issue of disputed fact exists.[5] If the nonmovant fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted.[6] As mere promise is insufficient under our court rules, a reviewing court may not employ a standard which cites the mere possibility that the claim might be supported by evidence produced at trial.[7]

---

[1] *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992).
[2] *Id* at 163.
[3] MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).
[4] *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 658; 653 NW2d 625 (2002).
[5] *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999).
[6] *Id.*
[7] *Maiden, supra*, at 120.

## ANALYSIS

### Count I - Exceeding Legislative Authority:

The AG asserts that by approving the OEAI Policy the CSC exceeded its legislative authority.

Art. 11 § 5 sets forth the scope of the CSC's authority:

> The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

Virtually every Michigan court that has addressed the scope of Art. 11 § 5 has held that this constitutional provision vests the CSC with plenary powers in its sphere of authority.[8] The Michigan Supreme Court has even gone so far as to state that "since that grant of power is from the Constitution, any executive, legislative or judicial attempt at incursion into that 'sphere' would be unavailing,"[9] Moreover, the scope of the authority and power of the CSC has repeatedly been recognized as unique among the fifty states, because the CSC is vested with final decision-making power that is generally exercised by the legislatures of other states.[10]

---

[8] See for example *AFSCME Council 25, et al v State Employees' Retirement System*, ___ Mich App ___, ___; ___ NW2d ___ (2011); *Council No. 11 v Michigan Civil Service Comm*, 408 Mich 385, 408; 292 NW2d _442 (1980); *Reed v Civil Service Commission*, 301 Mich 137; 3 NW2d 41 (1942).
[9] *Id.*
[10] *Report of the Michigan Citizens Advisory Task Force on Civil Service Reform* (July 1979), p 12; *Citizen's Advisory Task Force on State Labor-Management Relations* (September 1987), p 4.

3

Accordingly, the resolution of this issue turns on whether the CSC's approval of the OEAI Policy fell within its sphere of authority. Unquestionably in this case it did.

Included in Art. 11 § 5 is the authority to fix rates of compensation for all classified civil servants. Increases in compensation set by the CSC are subject to challenge only by means of a two-thirds vote in each legislative house to reject or reduce a proposed increase.[11] As the Michigan Supreme Court stated in *Council No. 11, supra*, Michigan courts:

> [D]o not question the commission's authority to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance.[12]

The Michigan Attorney General's office explicitly found that the CSC's provision of OEAI benefits constitutes "compensation" for purposes of Art. 11 § 5 in February 2011. Responding to an inquiry from Senator Rick Jones on that question, Plaintiff's office concluded:

> [T]he term 'compensation' as used in art 11, § 5 also includes fringe benefits such as health care benefits, including benefits extended to persons residing with a current classified employee. Moreover, it is clear the Commission's decision to allow eligible classified employees to add one or more additional persons to the State Health Plan constitutes an 'increase' in the rate of 'compensation' accorded current classified employees under art. 11, § 5.
>
> \* \* \*
>
> In summary, the Civil Service Commission's decision to allow current classified employees to enroll an additional adult and dependents into the State Health Plan . . . may be rejected or reduced within 60-days of transmission of the budget by a two-thirds vote of the members elected to and serving in each house of the Legislature.[13]

---

[11] Art. 11 § 5.

[12] *Id.*, at 406-407.

[13] OAG Letter to Sen. Rick Jones, dated February 16, 2011, attached to Defendants' brief as Exhibit 10.

This determination paved the way for the Legislature's attempt to reject or reduce the OEAI Policy, which attempt ultimately failed.

Moreover, Michigan courts have held in a number of cases that the term "compensation" includes more than money and specifically includes fringe benefits.[14] Furthermore, Michigan's past Attorney Generals have repeatedly opined that the term "compensation" should be construed broadly to include fringe benefits. Thus, in 1971 Attorney General Frank J. Kelly, found that the word "compensation" in Art. 11 § 5 includes fringe benefits, and in 1978 found that "compensation" is a generic term encompassing salaries and fringe benefits, including pension benefits, sick leave benefits, premium payments, and group health and life insurance premium payments.[15]

Thus, the provision of health insurance benefits clearly constitutes "compensation" for purposes of Art. 11 § 5. This being the case, the CSC's approval of the OEAI Policy fell within the scope of the CSC's sphere of authority granted to it by the Michigan Constitution, rather than exceeding that authority. Accordingly, the CSC is entitled to summary disposition pursuant to MCL 2.116(C)(10) as to Count I of Plaintiff's Complaint.

The Court notes that it could just as easily be argued, and the CSC here does argue, that the provision of health insurance benefits also constitutes the regulation of a condition of employment, an act that the CSC is also empowered to do under Art. 11 § 5. Because it is so clear that the provision of health benefits constitutes "compensation," however, there is no need for this Court to undertake such an analysis here.

---

[14] See, for example, *Kane v City of Flint*, 342 Mich 74, 80; 69 NW2d 156 (1955); *Bowler v Nagel*, 228 Mich 434, 440; 200 NW 258 (1924).
[15] OAG, 1971-1972, No. 4732, p 66 (December 29, 1971); OAG, 1977-1978, No. 5255, p 327 (January 18, 1978).

5

**Count II - Equal Protection Challenge**:

The AG also asserts that the CSC violated the Equal Protection Clause of the Michigan Constitution by approving the OEAI Policy. The Equal Protection clauses of the Michigan and U.S. Constitutions each provide that no person shall be denied the equal protection of the law.[16]

In assessing an equal protection challenge, the threshold inquiry is whether similarly situated individuals are treated differently.[17] Once it has been established that similarly situated individuals are treated differently, then the court must proceed to determining what level of scrutiny must be applied.[18] Where the challenged action, rule, or legislation treats similarly situated groups differently on the basis of a suspect classification or infringes on a fundamental right protected by the Constitution, the strict scrutiny standard applies and the government bears a heavy burden of establishing that the classification is narrowly tailored to serve a compelling state interest.[19] Otherwise, the action, rule, or legislation is presumed valid and will be sustained if it is found to be rationally related to a legitimate state interest.[20]

Threshold Question:

As to whether similarly situated individuals are treated differently, the AG stated in his Complaint:

> 33. The OEAI Policy unlawfully and arbitrarily denies equal protection of the laws by extending state health-plan eligibility only to non-family adult co-residents and their dependents.

---

[16] Const. 1963, Art 1 § 2; US Const, Am XIV.
[17] *Shepherd Montessori Center Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010).
[18] *Id.*
[19] *Id.*, at 319; *Harvey v State of Mich*, 469 Mich 1, 6; 664 NW2d 767 (2003).
[20] *Shepherd Montessori, supra*, at 318-319; *Harvey, supra*, at 6.

34. There is no rational basis to extend eligibility to a non-family member and to exclude family members from eligibility.[21]

Based on the above language the CSC argues that the AG has failed to set forth any factual allegation that family members who are not eligible for state health-plan benefits and co-inhabitants who are eligible for OEAI benefits are similarly situated. While the AG has not explicitly stated this it is obvious that this is exactly what the AG is alleging. Accordingly, the Court finds that the AG has adequately alleged that similarly situated individuals are treated differently.

Which Test Applies:

The AG has not specifically identified in his Complaint any fundamental right protected by the Constitution on which he asserts the OEAI policy infringes, and indeed refers in the Complaint only to the rational basis test as applied to this argument. However, the AG asserts in his brief that the OEAI Policy violates the fundamental right of familial association protected by the First and Fourteenth Amendments, and in particular the right to co-habitate with one's relatives.

The case law that addresses "familial association" status concerns severe restrictions on an individual's ability to co-habitate with a family member, including family members who are not part of the individual's immediate family, the question of whether to bear or beget a child, or the freedom of intimate and expressive association.[22] No such issues are raised in this case.

---

[21] Complaint, p 8.

[22] See, for example, *Moore v City of East Cleveland*, 431 US 494; 97 S Ct 1932; 52 L Ed 2d 531 (1977); *Carey v Population Services Int'l*, 431 US 678; 97 S Ct 2010; 52 L Ed 2d 675 (1977); *Roberts v US Jaycees*, 468 US 609; 104 S Ct 3244; 82 L Ed 2d 462 (1984).

7

The OEAI Policy allows those employees who have an adult non-family member residing with them on a long-term basis to add that individual, and any of that individual's dependents, under the employee's health insurance benefits. Nothing in the OEAI policy infringes on any employee's right to co-habitate with his or her family members, nor encourages any employee to opt to co-habitate with a non-family member over a family member, nor concerns the question of procreation. It simply provides the option for employees who have a non-family member residing with them on a long-term basis, whether they are of the same sex or of a different sex, to obtain health insurance benefits for that person. The OEAI policy benefits equally those involved in so-called common-law marriages and those involved in same-sex or platonic relationships. The policy is a reflection of the changing nature of society today, where marriage is less common, but the need for health insurance is no less real.

The AG also has not identified in his Complaint or his brief any suspect classification that he alleges is the basis of the complained-of disparate treatment. The classification of familial-relationship versus non-familial relationship does not constitute a suspect class. Moreover, to the extent that the AG may be suggesting that the protected classification is "marital status," that status has been found by at least one Court not to constitute a suspect class.[23] While that ruling is not binding on this Court it is persuasive, particularly since the AG has failed to identify any case law holding to the contrary.

---

[23] *Smith v Shalala*, 5 F3d 235, 239 (CA 7, 1993).

Under these circumstances, the OEAI Policy does not treat similarly situated groups differently on the basis of a suspect classification, and does not infringe on any fundamental right protected by the Constitution. Accordingly, strict scrutiny does not apply, and the Court need only find a rational basis for the challenged action, rule, or legislation in order for it to be sustained.

Analysis Under Rational Basis Test:

Under the rational basis test, a state policy is invalid if: (1) it fails to advance a legitimate governmental interest; or (2) if it is an unreasonable means of advancing a legitimate government interest.[24] The means chosen need not be the best for achieving those stated ends, but need only be rational in view of those ends.[25] As the U.S. Supreme Court has stated:

> In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.[26]

Here, the CSC has articulated a number of different rational bases for approval of the OEAI Policy. In the first place, the CSC has a strong interest in attracting and retaining a quality work force by offering competitive compensation and benefits. Delegates at the 1961 Constitutional Convention recognized this interest and it remains equally viable today.[27]

---

[24] *Montgomery v Carr*, 101 F3d 1117, 1130 (6th Cir. 1996).
[25] *Id.*
[26] *FCC v Beacg Communications, Inc*, 508 US 307, 313; 113 S Ct 2096; 124 L Ed 2d 211 (1993).
[27] See 1 Official Record, Constitutional Convention 1961, p 641.

9

Likewise, the CSC has adopted a collective bargaining process for its civil servants who are represented by organized labor, and the Office of State Employer and those unions have bargained in good faith over OEAI benefits and agreed to include it in their collective bargaining agreements. The CSC therefore, in approving the OEAI Policy, not only honored the collective bargaining agreements, but further took positive steps toward maintaining labor peace and stability. At least one court has found that compliance with contractual obligations is a rational basis for a government entity to act.[28]

As a result, the OEAI Policy is a rational means of advancing those legitimate governmental interests. Accordingly, the OEAI policy does not violate the Equal Protection Clause of the Michigan Constitution and the CSC is entitled to summary disposition pursuant to MCR 2.116(C)(10) as to Count II of the Complaint.

For the reasons set forth above, the Court issues the following Order:

### ORDER

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Disposition is **GRANTED** pursuant to MCR 2.116(C)(10) as to both Count I and Count II of the Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Disposition is **DENIED**.

This decision resolves the last pending claim and close this case.

Dated: October _6_, 2011

Hon. Paula J.M. Manderfield (P-34319)
Circuit Court Judge

---

[28] *Marcotante v City of Chicago*, 2008 WL 905160 (ND Ill, March 31, 2008) (unpublished).

10

## PROOF OF SERVICE

I hereby certify that I served a copy of the Opinion and Order Granting Defendants' Motion for Summary Disposition upon Margaret Nelson, Heather Meingast, Michael J. Hodge, and Scott R. Eldridge by placing said order in an envelope and placing same for mailing with the United States Mail at Lansing, Michigan, on October 6, 2011.

*Jean M. Smydra*

Jean M. Smydra
Judicial Assistant