**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THERESA BASSETT and CAROL KENNEDY, PETER WAYS and JOE BREAKEY, JOLINDA JACH and BARBARA RAMBER, DOAK BLOSS and GERARDO ASCHERI, DENISE MILLER and MICHELLE JOHNSON,

Plaintiffs,

v.

RICHARD SNYDER, in his official capacity as Governor of the State of Michigan,

Defendant.

Case No. 2:12-cv-10038

Hon. David M. Lawson
Mag. Judge Michael J. Hluchaniuk

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S CORRECTED MOTION TO DISMISS**

---

# TABLE OF CONTENTS


**Page**

**ISSUES PRESENTED** ..... **vii**

**INTRODUCTION** ..... **1**

**FACTUAL BACKGROUND** ..... **2**

**ARGUMENT** ..... **5**

**I. *BURFORD* ABSTENTION DOES NOT APPLY TO THIS CASE.** ..... **5**

**II. THE COMPLAINT ADEQUATELY PLEADS PLAINTIFFS' STANDING AND THE EXISTENCE OF A RIPE CONTROVERSY.** ..... **8**

A. Plaintiffs Have Adequately Pled A Concrete And Particularized Injury Traceable To Defendant's Action. ..... 8

B. Plaintiffs Have Pled The Existence Of A Ripe Dispute. ..... 12

**III. THE COMPLAINT ADEQUATELY PLEADS A VIOLATION OF THE EQUAL PROTECTION AND DUE PROCESS CLAUSES.** ..... **13**

A. The Complaint Adequately Pleads That P.A. 297 Violates The Equal Protection Clause. ..... 14

1. The Complaint Adequately Pleads That Plaintiffs Are Similarly Situated To Heterosexual Public Employees And Their Spouses Whom The Act Does Not Deprive Of Benefits. ..... 15

2. Plaintiffs Adequately Plead That The Act Is Not Rationally Related To A Legitimate State Interest. ..... 17

3. The Act Was Motivated by Animus. ..... 19

B. The Complaint Adequately Pleads A Violation Of Plaintiffs' Substantive Due Process Rights. ..... 21

**CONCLUSION** ..... **23**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*520 S. Mich. Ave. Assocs., Ltd. v. Devine*,
433 F.3d 961 (7th Cir. 2006) ........ 10

*Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*,
720 F.2d 897 (6th Cir. 1983) ........ 6

*Adkins v. Bd. of Educ. of Magoffin Cnty.*,
982 F.2d 952 (6th Cir. 1993) ........ 22

*Alaska Civil Liberties Union v. State*,
122 P.3d 781 (Alaska 2005) ........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 13

*Auerbach v. Board of Education*,
136 F.3d 104 (2d Cir. 1998) ........ 12

*Baehr v. Lewin*,
852 P.2d 44 (Haw. 1993) ........ 16

*Bangura v. Hansen*,
434 F.3d 487 (6th Cir. 2006) ........ 21

*Bedford v. N.H. Cmty. Technical Coll. Sys.*,
2006 WL 1217283 (N.H. Super. Ct. May 3, 2006) ........ 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 13

*Blachy v. Butcher*,
221 F.3d 896 (6th Cir. 2000) ........ 8

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) ........ 10

*Bogaert v. Land*,
675 F. Supp. 742 (W.D. Mich. 2009) ........ 7

*Bova v. City of Medford*,
564 F.3d 1093 (9th Cir. 2009) ........ 12

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*,
462 F.3d 219 (2d Cir. 2006) ........ 13

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) ........ i, 5

*City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*,
538 U.S. 188 (2003) ........ 20

*Collins v. Brewer*,
727 F. Supp. 2d 797 (D. Ariz. 2010) ........ 16

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ........ 5, 6

*Commonwealth of Massachusetts v. U.S. Dep't of Health & Human Servs.*,
Nos. 10-2204, 10-2207, 10-2214, 2012 WL 1948017 (1st Cir. May 31, 2012) ........ 14

*Davis v. Prison Health Servs.*,
No. 10-2690, 2012 WL 1623216 (6th Cir. May 10, 2012) ........ 14, 15

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) ........ 16

*Diaz v. Brewer*,
676 F.3d 823 (9th Cir. 2012) ........ 16

*Dragovich v. U.S. Dep't of the Treasury*,
No. C10-01564, 2012 WL 253325 (N.D. Cal. Jan. 26, 2012) ........ 17

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
438 U.S. 59 (1978) ........ 13

*Equal. Found. of Greater Cincinnati, Inc. v. City of Cincinnati*,
128 F.3d 289 (6th Cir. 1997) ........ 19, 20

*Flaskamp v. Dearborn Pub. Sch.*,
385 F.3d 935 (6th Cir. 2004) ........ 21

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........ 11

*Habich v. City of Dearborn*,
331 F.3d 524 (6th Cir. 2003) ........ 6, 7

*Hadix v. Johnson*,
230 F.3d 840 (6th Cir. 2000) ........ 20

*HDC, LLC v. City of Ann Arbor*,
675 F.3d 608 (6th Cir. 2012) ........ 19

*In re Levenson*,
560 F.3d 1145 (9th Cir. 2009) ........ 16

*Johnson v. Johnson*,
385 F.3d 503 (5th Cir. 2004) ........ 17

*Kallstrom v. City of Columbus*,
136 F.3d 1055 (6th Cir. 1998) ........ 23

*Lawrence v. Texas*,
539 U.S. 558 (2003) ........ 21

*League of United Latin Am. Citizens v. Bredesen*,
500 F.3d 523 (6th Cir. 2007) ........ 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 8, 9

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ........ 8

*Mem'l Hosp. v. Maricopa Cnty.*,
415 U.S. 250 (1974) ........ 18

*Montgomery v. Carr*,
101 F.3d 1117 (6th Cir. 1996) ........ 23

*Moore v. Detroit Sch. Reform Bd.*,
293 F.3d 352 (6th Cir. 2002) ........ 20

*New Orleans Pub. Serv. Inc. v. Council of New Orleans*,
491 U.S. 350 (1989) ........ 6, 7

*North Carolina v. Rice*,
404 U.S. 244 (1971) ........ 8

*Olden v. LaFarge Corp.*,
203 F.R.D. 254 (E.D. Mich. 2001) ........ 6

*Pac. Gas & Elec. Co. v. Energy Res. Comm'n*,
461 U.S. 190, 200–01 (1983) ........ 13

*Perry v. McGinnis*,
209 F.3d 597 (6th Cir. 2000) ........ 15

*Perry v. Sinderman*,
408 U.S. 593 (1972) ........ 22

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ........ 5

*Rinaldi v. Yeager*,
384 U.S. 305 (1966) ........ 16

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984) ........ 21, 22

*Romer v. Evans*,
517 U.S. 620 (1996) ........ 14, 19, 20

*Rouse v. DaimlerChrysler Corp.*,
300 F.3d 711 (6th Cir. 2002) ........ 5, 6

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
547 U.S. 47 (2006) ........ 9

*Saginaw Hous. Comm'n v. Bannum, Inc.*,
576 F.3d 620 (6th Cir. 2009) ........ 6

*Scarbrough v. Morgan Cnty. Bd. of Educ.*,
470 F.3d 250 (6th Cir. 2006) ........ 14

*Schalk v. Teledyne, Inc.*,
751 F. Supp. 1261 (W.D. Mich. 1990) ........ 10

*Severe Records, LLC v. Rich*,
658 F.3d 571 (6th Cir. 2011) ........ 13

*Shapiro v. Thompson*,
394 U.S. 618 (1969) ........ 18

*Sherbert v. Verner*,
374 U.S. 398 (1963) ........ 21

*Taylor Acquisitions, L.L.C. v. City of Taylor*,
313 F. App'x 826 (6th Cir. 2009) ........ 15

*Thomas More Law Ctr. v. Obama*,
651 F.3d 529 (6th Cir. 2011) ........ 9, 10, 12, 13

*Toledo Area AFL-CIO Council v. Pizza*,
154 F.3d 307 (6th Cir. 1998) ........ 22

*U.S. Dep't of Agric. v. Moreno*,
413 U.S. 528 (1973) .......... 20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) .......... 19, 20

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 10, 13

*Washington v. Glucksberg*,
521 U.S. 702 (1997) .......... 21

*Williams v. Vermont*,
472 U.S. 14 (1985) .......... 15

*Wisc. Educ. Ass'n Council v. Walker*,
824 F. Supp. 2d 856 (W.D. Wis. 2012) .......... 22

*Ysursa v. Pocatello Educ. Ass'n*,
555 U.S. 353 (2009) .......... 22

## ISSUES PRESENTED

1. The Court should not abstain from hearing this case on the grounds outlined in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because the case involves no state administrative agency and no difficult question of state law.
2. Defendant's motion to dismiss on grounds of standing and ripeness should be denied because Plaintiffs have adequately pled both actual present injury and imminent future injury.
3. Plaintiffs have adequately pled that P.A. 297 violates the Equal Protection Clause of the Fourteenth Amendment because it treats Plaintiffs differently from similarly situated public employees, lacks a rational relationship to any legitimate state goals, and was motivated by animus.
4. Plaintiffs have adequately pled that P.A. 297 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by indirectly penalizing Plaintiffs' exercise of their fundamental right to intimate association.

## INTRODUCTION

In December 2011, Defendant Snyder signed the Public Employee Domestic Partner Benefit Restriction Act, P.A. 297 (the "Act"), into law. Plaintiffs sued, alleging that the Act violates the Fourteenth Amendment by barring Michigan public employers from voluntarily offering family health insurance coverage to the same-sex domestic partners of their employees.

Defendant's motion to dismiss fails for four fundamental reasons:

***First***, *Burford* abstention is inappropriate here. *Burford* abstention requires specific circumstances, such as the involvement of a state administrative agency, a complex regulatory scheme, a specialized alternate forum for review, and a difficult question of state law—none of which are present in this case. *Burford* abstention is clearly inapplicable when the sole question presented to the Court is whether a state law violates Plaintiffs' constitutional rights.

***Second***, Plaintiffs have adequately pled standing to challenge the Act and the existence of a ripe controversy. Defendant's contention that Plaintiffs have no legal recourse until they actually lose insurance coverage, or know the date when benefits will terminate, misinterprets the doctrines of standing and ripeness. The amended complaint ("Complaint") alleges that one of the Partner Plaintiffs has already lost her insurance, that other Partner Plaintiffs will lose coverage when their employers' present insurance agreements expire at the end of 2012, and that the remaining Partner Plaintiffs will certainly lose coverage when their current collective bargaining agreements terminate. Thus, even those Plaintiffs whose benefits have not yet been terminated suffer injury now in the form of anxiety and uncertainty about their insurance coverage, and face imminent future injury as the loss of insurance draws nearer each day.

***Third***, the Complaint adequately pleads that the Act violates the Equal Protection Clause. Plaintiffs alleged facts demonstrating that the Act's stated purpose and actual effect is to deprive Plaintiffs and other lesbian and gay public employees of family benefits for which their

heterosexual coworkers remain eligible. Dismissal on a Rule 12(b)(6) motion is inappropriate because the Complaint pleads factual allegations that, if proven true, would establish that there is no rational basis for the Act.

***Fourth***, the Complaint adequately pleads that the Act violates Plaintiffs' due process rights. Defendant misconstrues Plaintiffs' claim as asserting a fundamental right to employment benefits. Rather, the Complaint alleges that the Act impermissibly burdens Plaintiffs' intimate family relationships in violation of their fundamental rights under the Due Process Clause.

In summary, this Court can and should decide the important constitutional questions raised by this case, but should only do on the basis of a factual record. Thus, Defendant's motion to dismiss should be denied.

## FACTUAL BACKGROUND

### *The Plaintiffs*

Plaintiffs in this action are five gay and lesbian employees who work for public entities in Michigan (Bassett, Ways, Jach, Bloss, and Miller, collectively the "Employee Plaintiffs") and their committed same-sex partners (Kennedy, Breakey, Ramber, Ascheri, and Johnson, collectively, the "Partner Plaintiffs"). The Employee Plaintiffs serve the people of Michigan in various capacities: two are public school teachers, one is a senior systems analyst for a county government, one is a county health coordinator, and one is a community college professor. (Am. Compl. ¶¶ 15, 22, 29, 37, 45) Each of the Employee Plaintiffs' employers has chosen to offer health insurance coverage to "other qualified adults" (among other program names) in their employees' households, and each of the Partner Plaintiffs has enrolled for this benefit. (*Id.* ¶¶ 19, 26, 34, 41, 50)

***The Act***

The Act was passed by the Michigan Legislature and signed into law by Governor Rick Snyder in December 2011. (*Id.* ¶¶ 70–71) The Act prohibits public employers from offering health insurance benefits or any other fringe benefits to individuals who share a residence with a public employee and who are not married to the employee, dependents of the employee as defined in the Internal Revenue Code, or potential heirs of the employee as defined by Michigan intestate succession laws. (*Id.* ¶ 72) The Act directly targets gays and lesbians in committed relationships. The Act's title itself emphasizes its impact on domestic partners. (*Id.* ¶ 4) And because gay and lesbian couples cannot marry in Michigan, the Act facially discriminates against only those domestic partners who are of the same sex. (*Id.* ¶¶ 7, 8, 73, 74, 79, 80)

Plaintiffs allege facts to show that the Act's evident discriminatory intent and clear discriminatory impact violate Plaintiffs' substantive due process and equal protection rights under the U.S. Constitution. (*Id.* ¶ 104) In addition to pleading the Act's facial discrimination and discriminatory impact, Plaintiffs offer additional evidence that the Act is the product of intentional discrimination. Plaintiffs point to legislators' public statements demonstrating the discriminatory motivation underlying the Act. (*E.g.*, *id.* ¶ 77 (quoting Representative Pete Lund's reference to domestic partner benefits as "an absolute abomination"); *id.* ¶¶ 78–79) Plaintiffs assert that the Act is the product of a long political and legislative history targeting same-sex domestic partner benefits for elimination. (*Id.* ¶¶ 61–65, 70–72)

Plaintiffs also allege facts to show that the Act lacks a rational basis. Any purported cost savings are illusory. (*Id.* ¶¶ 86–87, 95) So few employees take advantage of these benefits that employers' cost savings are negligible at best. (*Id.* ¶¶ 87, 90) Moreover, none of the purported savings created by the Act redound to the State; the money remains with the local entities that

provided the benefits. (*Id.* ¶ 95) In fact, no state entities are involved in local public employers' provision of benefits—these decisions have instead historically fallen within the sole province of the employers. (*Id.* ¶¶ 67–68)

***The Act's Impact on Plaintiffs***

The harm from the Act is already evident. One plaintiff couple has already lost benefits as a result of the Act. Michelle Johnson, whose partner Denise Miller is an English teacher at Kalamazoo Valley Community College, lost her health care benefits on December 31, 2011 as a result of the Act. (*Id.* ¶¶ 45, 52) Michelle has gone without health care coverage since the Act deprived Denise of this valuable employment benefit. (*Id.* ¶ 52) The loss of coverage leaves Michelle in danger of not being able to access or afford care for fibroid tumors and cysts on her breasts, which require monitoring and may necessitate surgery. (*Id.* ¶ 51)

The other plaintiff couples will certainly lose their benefits in the future. Two Partner Plaintiffs will become ineligible for employer-provided benefits at the end of this year. (*Id.* ¶¶ 35, 43, 82) The other two Partner Plaintiffs will lose these benefits when their employee partner's employment contract is renegotiated, an event that will certainly come to pass. (*Id.* ¶¶ 19, 27, 82)

The upheaval inflicted by the Act has prompted anxiety and uncertainty in Plaintiffs. The pressure of finding alternative health care and the financial toll of losing this valuable employment compensation impose strain and worry on Plaintiffs. (*Id.* ¶¶ 20, 27, 35, 43)

The Employee Plaintiffs perform the same work as their heterosexual married coworkers, whose benefits are unaffected by the Act. (*Id.* ¶¶ 11, 15, 22, 29, 37, 45, 83) The Partner Plaintiffs have as great a need for health care coverage as the family members of the Employee Plaintiffs' married heterosexual coworkers. (*Id.* ¶¶ 18, 25, 33, 35, 40, 42, 49, 51) Yet their

coworkers receive benefits coverage for their life partners through marriage, while the Act bars Plaintiffs from receiving similar benefits that their employers voluntarily sought to provide them.

## ARGUMENT

### I. *BURFORD* ABSTENTION DOES NOT APPLY TO THIS CASE.

Defendant's assertion that the Court should refrain from hearing this case under the doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) is absurd. Abstention is disfavored—it is only available as an "extraordinary and narrow exception to a court's duty to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 707 (1996) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976) ("Only the clearest of justifications will warrant dismissal.")). "*Burford* abstention should not be applied unless: (1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 716 (6th Cir. 2002) (quoting *Colo. River*, 424 U.S. at 814). None of the extraordinary circumstances warranting *Burford* abstention are present here.

First, Plaintiffs' claims exclusively arise from ***federal law***; the lack of any state law issue or administrative proceedings means *Burford* cannot apply. Plaintiffs' Complaint raises a single question of federal law: Does the Act violate the Fourteenth Amendment of the Constitution? Constitutional interpretation is the bread and butter of the federal courts—if anything, the need for the exercise of federal jurisdiction is heightened when the issue for review is whether a state law violates constitutional protections. *Habich v. City of Dearborn*, 331 F.3d 524, 533–34 (6th

Cir. 2003) ("[T]he case against *Burford* is even stronger [when] the issue is whether a state action violated constitutional limits.").

Second, *Burford* abstention "applies only if a federal court's decision on a state law issue is likely to 'interfere with the proceedings or orders of state administrative agencies.'" *Rouse v. DaimlerChrysler Corp. UAW*, 300 F.3d at 716 (quoting *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)) (holding *Burford* abstention "inapplicable" because "there is no state administrative agency involved in the dispute"); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 267 (E.D. Mich. 2001) (rejecting *Burford* abstention where alternative forum, the state court overseeing a related consent judgment, did not have "special competence in the particular subject matter" that would render the federal forum inferior) (citing *Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983)). The purpose of the doctrine is to "protect[] complex state administrative processes from undue federal interference." *New Orleans Pub. Serv.*, 491 U.S. at 362. Where, as here, there is no administrative process to be protected, the court should not abstain. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009).

Third, to the extent a state policy problem is at issue here, it is hardly a problem of "substantial public import whose importance transcends the result in the case then at bar." *Colo. River*, 424 U.S. at 814. Defendant cites six other recent acts cutting public employee benefits or relating to fiscal accountability. (MTD at 7–8) Other cost-cutting acts do not comprise the kind of complex state administrative scheme that *Burford* abstention was intended to address. Concern for the public fisc is one of the most basic—and generic—policy objectives of any law-making body. Under Defendant's argument, any state could force a federal court to relinquish jurisdiction over any dispute merely by raising budget concerns and citing to other statutes with

similar purported cost-saving goals. This is all the more clear here, where the Complaint alleges (and Plaintiffs' motion for preliminary injunction shows) that cost justifications for the Act are patently lacking. (Am. Compl. ¶¶ 86–87, 90, 95) Defendant's assertion that the budgetary impact of the Act transcends the importance of this Court's resolution of Plaintiffs' equal protection and due process claims is ill-founded.[1]

Fourth, federal review in this case would not be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Plaintiffs' challenge "disrupts state efforts" at lawmaking (MTD at 9) only to the same extent as federal court review of ***any*** state law, but the alternative to federal review would be to let states run roughshod over the Constitution in the name of promoting a "coherent public policy." *Burford* abstention does not require a court to stand by while the state fashions an unconstitutional—but "coherent"—public policy. *New Orleans Pub. Serv.*, 491 U.S. at 363 (while review "may, of course, result in an injunction against enforcement of the [law], there is no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy" (quotation omitted)); *Habich*, 331 F.3d at 534 (same). As the court held in a recent election law case in which the State urged *Burford* abstention: "Federal review might be disruptive if it led to an inconsistent application of state law. [Here,] [f]ederal review will simply determine whether Michigan's policy is consistent with First Amendment requirements. That is not the kind of disruption of state efforts that *Burford* is designed to avoid." *Bogaert v. Land*, 675 F. Supp. 2d 742, 747 (W.D. Mich. 2009). In the case at bar, Plaintiffs merely challenge whether the Act is

---

[1] Defendant's effort to associate this case with public policy questions about the definition of marriage (MTD at 9, citing Mich. Const. art. 1 section 25) is also unavailing. Plaintiffs are not challenging the Michigan Constitution's definition of marriage in this action.

consistent with Fourteenth Amendment requirements. Because this case does not implicate the concerns underlying *Burford* abstention, Plaintiffs' claims should be heard by this Court.[2]

## II. THE COMPLAINT ADEQUATELY PLEADS PLAINTIFFS' STANDING AND THE EXISTENCE OF A RIPE CONTROVERSY.

A plaintiff meets Article III's "case or controversy" requirements on a motion to dismiss when she pleads three elements: "(1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) likelihood that the injury would be redressed by a favorable decision of the Court." *Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). Plaintiffs adequately pled those elements here.

### A. Plaintiffs Have Adequately Pled A Concrete And Particularized Injury Traceable To Defendant's Action.

The Supreme Court has noted, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). The Supreme Court has further held:

---

[2] Defendant's assertion that "a ruling favorable to Plaintiffs here will be used as a sword—first to impose limitations on Michigan's marriage amendment as interpreted by the Michigan Supreme Court and, second, to impact the broader public by requiring all public employers to provide domestic partner benefits" (MTD at 9) is specious—a scare tactic meant to convince the Court that Plaintiffs' narrow legal challenge to the Act puts the Court at the precipice of a slippery slope to equal marriage rights and mandatory partner benefits. Defendant's argument is irrelevant to the *Burford* analysis and every other aspect of Defendant's motion to dismiss. Plaintiffs do not challenge the constitutionality of Michigan's marriage amendment, nor do they assert that any kind of health benefits should be mandatory. The Court's obligation is to determine the Act's constitutionality, not to anticipate some other hypothetical legal challenge that could conceivably follow. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon ***whether the plaintiff is himself an object of the action*** (or forgone action) at issue. ***If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.***

*Defenders of Wildlife*, 504 U.S. at 561–62 (emphasis added); *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011). Plaintiffs have not only adequately pled "general factual allegations of injury resulting from the defendant's conduct," they have pled that they are "objects of the action at issue." *Defenders of Wildlife*, 504 U.S. at 561; (Am. Compl. ¶¶ 9, 19, 27, 35, 43, 51–52, 70–72, 82, 125–30).

The Complaint alleges that the specific purpose of the Act is to prohibit public employers from offering the kind of domestic partnership benefits that Plaintiffs either used to, or for the meantime still do, enjoy. (*Id.* ¶¶ 4, 6, 71–74, 82) As Defendant concedes, one plaintiff couple, Plaintiffs Michelle Johnson and Denise Miller, already lost their partner health insurance coverage. (MTD at 11; Am. Compl. ¶ 52) Thus, Defendant's standing argument relates only to the four plaintiff couples who have not lost coverage yet.[3] Defendant contends that these Plaintiffs must wait until they lose their health insurance to challenge the Act. (MTD at 14) This overly cramped view of standing is contrary to law.

A plaintiff can meet the injury requirement by alleging either "actual" present injury or "imminent" future injury. *Thomas More Law Ctr.*, 651 F.3d at 535 (citing *Lujan*, 504 U.S. at 560–61). Here, Plaintiffs have alleged both. First, the Complaint alleges that each of the

---

[3] Defendant's challenge to certain Plaintiffs' standing is largely academic, since "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Thomas More Law Ctr.*, 651 F.3d at 535 (citing *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)). This Court would be required to adjudicate this controversy even if standing were limited to Johnson and Miller, which it is not.

Plaintiffs has incurred an "actual" present injury. Plaintiffs allege that they suffer injury in the form of worry and uncertainty regarding their health insurance status. (Am. Compl. ¶¶ 130–31) Courts routinely recognize this form of injury as sufficiently concrete to confer standing. *Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1990) (company decision to shift premium payments to retirees, allegedly in violation of collective bargaining agreement, would impose irreparable harm in the form of "uncertainty [of] . . . how much money will be needed to cover medical expenses" and "financial planning burden"), *aff'd*, 948 F.2d 1290 (6th Cir. 1991); *Thomas More Law Ctr.*, 651 F.3d at 536. In this case, the four plaintiff couples whose benefits have not already been terminated have pled—and now have supported with record evidence[4]—that they have already experienced anxiety and the pressure of finding alternative health care as a result of the Act. (Am. Compl. ¶¶ 20, 27, 35, 43)

Second, Plaintiffs allege that the Act inflicts imminent future harm on those Plaintiffs who have not yet lost their insurance. (*Id.* ¶¶ 20, 27, 35, 43) The Sixth Circuit has emphasized that "[i]mminence is a function of probability," *Thomas More Law Ctr.*, 651 F.3d at 536, and here it is a matter of when—not if—Plaintiffs will lose their benefits. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974); *520 S. Mich. Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006) ("Standing depends on the probability of harm, not its temporal proximity."). In *Thomas More Law Center*, the Eastern District of Michigan held that the plaintiffs experienced actual injury in the form of "present financial

---

[4] (*See* PI Mot. Ex. T-1 ¶¶ 9-10; Ex. T-2 ¶¶ 9-10; Ex. T-3 ¶¶ 9-10; Ex. T-4 ¶¶ 9-10; Ex. T-5 ¶¶ 11-12; Ex. T-6 ¶¶ 9-10; Ex. T-7 ¶¶ 10-11; Ex. T-8 ¶¶ 9-10; Ex. T-9 ¶¶ 8-10; Ex. T-10 ¶¶ 7-9); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (noting that "all materials of record" may be considered when deciding standing issues).

pressure" to change their present spending and saving habits in anticipation of enforcement of the federal Patient Protection and Affordable Care Act. 720 F. Supp. 2d 882, 889 (E.D. Mich. 2010), *aff'd,* 651 F.3d 529 (6th Cir. 2011). The court concluded that plaintiffs had standing even though this injury occurred ***three and a half years before the effective date*** for enforcement of the challenged law. 651 F.3d at 537.

Because the Act impacts contracts or collective bargaining agreements once they are "amended, extended, or renewed," it will deprive Plaintiffs of their partner health insurance coverage sooner or later.[5] Plaintiffs Jach, Ramber, Bloss, and Ascheri will lose their Other Eligible Adult insurance on December 31, 2012, upon expiration of the relevant contracts. (Am. Compl. ¶¶ 35, 43; PI Mot. Ex. T-5 ¶ 10; Ex. T-6 ¶ 8; Ex. T-7 ¶ 9; Ex. T-8 ¶ 8) Plaintiffs Bassett, Kennedy, Ways, and Breakey will lose their Other Eligible Adult insurance upon the renegotiation of the Master Agreement between the Ann Arbor Board of Education and the Ann Arbor Education Association. (Am. Compl. ¶¶ 19, 27; PI Mot. Ex. T-1 ¶ 8; Ex. T-2 ¶ 8; Ex. T-3 ¶ 8; Ex. T-4 ¶ 8) Thus, one of the plaintiff couples has lost benefits; two couples will lose benefits in less than seven months, and two couples will lose benefits when the employee's contract is renegotiated, which might not occur for years but could also occur this year. In all instances, "the threatened injury is certainly impending," *see Thomas More Law Ctr.*, 651 F.3d at 536 (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)), and termination of benefits is a certainty.

---

[5] Plaintiffs were not, as Defendant suggests (MTD at 15) required to plead the precise end date of their employment contracts in order to adequately plead that they are injured by the Act. Defendant does not—and cannot—contest that the Act requires the benefits to be terminated upon the next amendment, extension, or renewal of their agreements—hardly a speculative or hypothetical injury. Nonetheless, Plaintiffs' declarations in support of their motion for preliminary injunction set forth additional information regarding the likely date when benefits will terminate. (*See* PI Mot. Exs. T-1 ¶ 8, T-2 ¶ 8, T-3 ¶ 8, T-4 ¶ 8, T-5 ¶ 10, T-6 ¶ 8, T-7 ¶ 9, T-8 ¶ 8)

Defendant asserts that Plaintiffs' benefits might not end because of the Act, but because of some other hypothetical outcome—*e.g.*, they might separate from each other, become qualified as IRS dependents, change jobs, retire, or be terminated before their benefits cease. (MTD at 12, 14) In *Thomas More Law Center*, the Sixth Circuit specifically held that such conjecture has no place in the injury or ripeness inquiry:

> The only developments that could prevent this injury from occurring are not probable and indeed themselves highly speculative. Plaintiffs, true enough, could leave the country or die, and Congress could repeal the law. But these events are hardly probable and not the kind of future developments that enter into the imminence inquiry.

*Thomas More Law Ctr.*, 651 F.3d at 537 (citation omitted).[6] Thus, the theoretical possibility that a Plaintiff might lose benefits in a manner unrelated to the Act—or somehow might retain benefits for some temporary period in spite of the Act—does not alter the standing analysis.[7]

### B. Plaintiffs Have Pled The Existence Of A Ripe Dispute.

In considering whether a controversy is ripe for adjudication, courts consider "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court

---

[6] The cases cited by Defendant are distinguishable from the facts here. Both *Auerbach v. Board of Education*, 136 F.3d 104, 108–09 (2d Cir. 1998), and *Bova v. City of Medford*, 564 F.3d 1093, 1096–97 (9th Cir. 2009), involved non-retired teachers challenging the retirement provisions of their current employment contracts. The loss at issue was contingent upon plaintiffs' retirement—a voluntary act not certain to occur—and on whether their future employment contracts contained the same disputed terms. *Bova*, 564 F.3d at 1096–97. But here, termination of Plaintiffs' benefits is not contingent on their voluntary actions or the unpredictable outcome of contract renegotiation; rather, benefits will certainly terminate upon the next contract amendment, extension, or renewal. *See Thomas More Law Ctr.*, 651 F.3d at 538–39 (plaintiffs who "had not taken any action that would subject them to the Act" lacked standing, while plaintiffs who "need not do anything to become subject to the Act" had standing).

[7] Defendant also misconstrues the Partner Plaintiffs' claims as asserting rights that only belong to the Employee Plaintiffs. (MTD at 12–13) Not so—the Partner Plaintiffs are asserting their own legal right to equal protection of the laws and their due process right against a law that impermissibly burdens their fundamental right to conduct their long-term committed relationships their partners. Thus, Defendant's prudential standing argument is inapposite.

consideration." *Pac. Gas & Elec. Co. v. Energy Res. Comm'n*, 461 U.S. 190 (1983). Because Defendant's challenge to ripeness, like his standing argument, boils down to the whether Plaintiffs' injury is sufficiently imminent, the ripeness analysis should be collapsed with the standing analysis. The Sixth Circuit has held that "'if a defendant's ripeness arguments concern only' the 'requirement that the injury be imminent rather than conjectural or hypothetical' then 'it follows that our analysis of [the defendant's] standing challenge applies equally and interchangeably to its ripeness challenge.'" *Thomas More Law Ctr.*, 651 F.3d at 537 (citing *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006)); *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 81 (1978); *Warth v. Seldin,* 422 U.S. 490, 499 n. 10 (1975). Having adequately pled that Plaintiffs have suffered injury or will suffer imminent injury as a result of the Act, it follows that a favorable decision striking down the Act would redress the injury. *Thomas More Law Ctr.*, 651 F.3d at 535.

## III. THE COMPLAINT ADEQUATELY PLEADS A VIOLATION OF THE EQUAL PROTECTION AND DUE PROCESS CLAUSES.

When deciding a motion to dismiss under Rule 12(b)(6), courts "'review the complaint in the light most favorable to [p]laintiffs, accept their factual allegations as true, and determine whether [p]laintiffs undoubtedly can prove no set of facts in support of [their] claims that would entitle [them] to relief.'" *Severe Records, LLC v. Rich*, 658 F.3d 571, 578 (6th Cir. 2011) (citations and internal quotation omitted). To succeed on a motion to dismiss, a defendant must demonstrate that the plaintiff has not "state[d] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Complaint need only provide enough specificity and detail for every element of Plaintiffs' claims to "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A. The Complaint Adequately Pleads That P.A. 297 Violates The Equal Protection Clause.

The Equal Protection Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To establish a claim for relief under the Equal Protection Clause, a "plaintiff may demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Davis v. Prison Health Servs.*, No. 10-2690, 2012 WL 1623216, at *3 (6th Cir. May 10, 2012) (quoting *Scarbrough*, 470 F.3d at 260). To survive rational basis scrutiny, a law must be "narrow enough in scope and grounded in a sufficient factual context for [courts] to ascertain some relation between the classification and the purpose it serve[s]." *Romer v. Evans*, 517 U.S. 620, 632–33 (1996). Plaintiffs have adequately pled the elements of an equal protection violation, such that their claim can only be decided based on a review of the factual record.[8]

---

[8] Defendant does not address Plaintiffs' assertions that gays and lesbians represent a suspect class, perhaps assuming that rational basis review applies. While Plaintiffs focus herein on the arguments in Defendant's motion to dismiss, the motion should be denied for the additional reasons that Plaintiffs belong to a suspect class (gays and lesbians) and are subject to sex discrimination. (Am. Compl. ¶¶ 104, 115) Moreover, even if it does not treat gays and lesbians as a suspect class, this Court should scrutinize the Act with care, rather than apply the highly deferential form of rational basis review Defendant calls for (MTD at 25), because of the discrimination gays and lesbians have historically experienced and continue to experience, and the substantial burden caused by the loss of family medical care. *See, e.g., Commonwealth of Massachusetts v. U.S. Dept. of Health and Human Servs.*, Nos. 10-2204, 10-2207 & 10-2214, 2012 WL 1948017, at *6 (1st Cir. May 31, 2012) (because of the "historic patterns of disadvantage suffered by" gays and lesbians and the burdens of losing important benefits such as spousal health care coverage, when applying rational basis review a court should "scrutinize with care the purported bases for the legislation").

**1. The Complaint Adequately Pleads That Plaintiffs Are Similarly Situated To Heterosexual Public Employees And Their Spouses Whom The Act Does Not Deprive Of Benefits.**

To state an equal protection claim, plaintiffs must allege disparate treatment as compared to others who are "similarly situated in all material respects." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009); *see Davis,* 2012 WL 1623216, at *4 (gay prisoner-worker's complaint sufficiently stated an equal protection claim for sexual orientation discrimination by asserting that heterosexual prisoner-workers who performed the same job were similarly situated). In making the "similarly situated" inquiry, "courts should not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). To determine what qualities are relevant for this analysis, courts look to the underlying purpose of the law. *Williams v. Vermont*, 472 U.S. 14, 24 (1985) (concluding that two groups are similarly situated if "[t]he distinction between them bears no relation to the statutory purpose.").

Here, the Complaint alleges that "[t]he Public Employee Plaintiffs are similarly situated in every relevant respect to their heterosexual coworkers who are married and eligible to receive family coverage for their spouses as part of their employment compensation." (Am. Compl. ¶ 11) The Complaint also alleged that Plaintiffs' interests in caring for their immediate family members are no different from those of married couples, and like married couples, their relationships entail long-term commitments, financial interdependence, emotional support, and legal bonds. (*Id.* ¶¶ 8, 16, 17, 23, 24, 30, 31, 38, 39, 46–48) The Complaint also alleged that the Public Employee Plaintiffs' sexual orientation and inability to legally marry is not relevant to

their employment performance or compensation.[9] (*Id.* ¶¶ 11, 83) *See Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966) ("[I]n defining a class subject to legislation, the distinctions that are drawn [must] have some relevance to the purpose for which the classification is made.").

Defendant's motion to dismiss does not assert that Plaintiffs' "similarly situated" allegations are factually insufficient to state a claim. Rather, Defendant offers only the conclusory assertion that "[u]nmarried employees, whether opposite-sex or same-sex, are not similarly situated to married employees in all material respects." (MTD at 24) Defendant thus lumps all unmarried employees together and asserts that they are qualitatively different from married employees because they are not married. This argument is circular, because the very fact that the Act limits benefits to spouses, IRS dependents, and relatives recognized under Michigan intestacy law, while gay and lesbian public employees ***cannot marry or have their legal marriages entered elsewhere recognized*** under Michigan law, is what renders the Act facially discriminatory.[10] (Am. Compl. ¶ 80) Other courts considering similar laws have held that when a benefit is limited to married couples in a state in which same-sex couples cannot marry, those same-sex couples are similarly situated to married couples for purposes of family employment benefits. *Collins v. Brewer*, 727 F. Supp. 2d 797, 803 (D. Ariz. 2010), *aff'd sub nom. Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011), *reh'g denied*, 676 F.3d 823 (9th Cir. 2012);

---

[9] Plaintiffs' factual allegations also show that the Act discriminates on the basis of sex, since it discriminates against Plaintiffs based on each one's sex in relation to the sex of his or her domestic partner. The Act's restriction of access to family health insurance benefits to married couples as well as family members who can take under the laws of intestacy, while denying same-sex couples such benefits, constitutes sex discrimination. *See In re Levenson*, 560 F.3d 1145, 1147 (9th Cir. 2009); *Baehr v. Lewin*, 852 P.2d 44, 67–68 (Haw. 1993).

[10] Contrary to Defendant's assertion, Plaintiffs do not claim that "a[n opposite-sex] couple would marry simply to obtain health benefits." (MTD at 24) Rather, Plaintiffs simply point out that opposite-sex couples have the option to marry their committed life partners, and can thus obtain benefits of marriage such as spousal insurance coverage. But same-sex couples do not have this option. As such, they cannot plausibly be compared to opposite-sex unmarried couples, who have freely decided not to marry their partners.

*Dragovich v. U.S. Dep't of the Treasury*, No. C10-01564, 2012 WL 253325, at *7 (N.D. Cal. Jan. 26, 2012); *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 788 (Alaska 2005); *Bedford v. N.H. Cmty. Technical Coll. Sys.*, Nos. 04-E-229, 04-E-230, 2006 WL 1217283, at *6 (N.H. Super. Ct. May 3, 2006). This Court should find that Plaintiffs have met their pleading burden here.

### 2. Plaintiffs Adequately Plead That The Act Is Not Rationally Related To A Legitimate State Interest.

To sufficiently plead that state action lacks a rational basis, a plaintiff can allege facts that, if true, demonstrate that there is no relationship between the state action and legitimate state goals. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 537 (6th Cir. 2007); *Johnson v. Johnson*, 385 F.3d 503, 530 (5th Cir. 2004) (denying motion to dismiss where allegations that plaintiff was subjected to "an arbitrary and irrational classification" that was motivated by "hostility and animus" toward gays would, if proven true, establish that government action lacked a rational basis). Here, Plaintiffs allege facts demonstrating that the Act has no relationship to cost savings (Am. Compl. ¶¶ 86–96) and does not further Michigan's marriage law or promote marriage between a man and a woman (*id.* ¶¶ 78–79, 103). The State offers no other potential justification for the law. These allegations are more than sufficient to overcome any presumption of rationality for the Act.

Defendant's argument that the Act has a "reasonable basis" because it might result in some incidental reduction in the State's costs (MTD at 25) does not carry the day on a motion to dismiss. Again, the Complaint asserted that cost savings to any entity would be "negligible" and would not be recouped by the State.[11] (Am. Compl. ¶ 86) In turn, Defendant cannot articulate

---

[11] Although the Court should not look beyond the pleadings on Defendant's motion to dismiss, should it find occasion to do so, it should consider the wealth of evidence attached to Plaintiffs'

any "fit" between the Act's facial discrimination against gay and lesbian Michiganders and purported cost savings for the State. First, only a handful of public employers across the State offer the benefit and only small numbers of families have participated, so any savings would be miniscule. Second, the local government entities offering these benefits bear the costs of the benefits, so any purported savings will not redound to the State, but to the local entities which would rather offer the benefits. (*Id.* ¶ 95) Third, the sheer number of people who remain eligible for benefits under the Act—all of the public employee's intestate successors and dependents, as well as individuals not living with the employee—undercuts any assertion that the legislature intended to save costs by barring public employers from offering benefits to domestic partners.

The State asserts that forcing local governments to save money is a "significant matter[] of public concern and importance that transcend[s] the results in this case." (MTD at 8) However, local financial savings cannot justify statewide legislation that penalizes gay and lesbian employees' families while leaving other employees' family benefits intact. Absent a justification for selectively placing the burden of cost savings on lesbian and gay families, such savings cannot provide a rational basis for the discrimination. *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 263 (1974) (holding that government may not "protect the public fisc by drawing an invidious distinction between its classes of citizens."); *Shapiro v. Thompson*, 394 U.S. 618, 633 (1969) (state may not "limit its expenditures . . . by invidious distinctions between classes of its citizens"); *Equal. Found. of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 300

---

Motion for Preliminary Injunction—including Defendant's admissions in discovery that the State will not save any money from the Act. (Mot. File Add'l Materials Ex. 3.C, RFA 3, 9 (Docket No. 38)) This evidence further underscores that Plaintiffs' claims should not be dismissed at the pleading stage.

(6th Cir. 1997) (where state argued that its potential cost savings justified a statewide law against local anti-discrimination ordinances covering sexual orientation, "the financial interests . . . of the state as a whole are not implicated if a municipality creates special legal protections for homosexuals applicable only within that jurisdiction and implements those protections solely via local governmental apparatuses."); *Commonwealth of Massachusetts*, 2012 WL 1948017, at *4 (finding federal statute unconstitutional under rational basis review even though "Congress could have rationally believed [it] would reduce costs"). Because Plaintiffs have alleged facts that, if true, would show that the Act is "divorced from any factual context from which [one] could discern a relationship to legitimate state interests," *Romer*, 517 U.S. at 635, Defendant's motion to dismiss should be denied.[12]

### 3. The Act Was Motivated by Animus.

To adequately plead that animus motivated a discriminatory law, "a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Identifying animus "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Given that animus is rarely explicitly stated, litigants generally rely on circumstantial evidence that gives rise to an inference of animus—such as the legislature's lack of rational basis in enacting the law, the law's disproportionate impact on a certain group, its historical background, and other circumstantial evidence demonstrating that the law's classifications are drawn "for the

---

[12] Again, Defendant inappropriately asserts, without basis, that the Court stands atop a slippery slope, arguing that if Plaintiffs win this case, it "would likely . . . be used to force *all* public employers to provide such benefits." (MTD at 24) As discussed above, this is an improper challenge to the pleadings, since it requires the Court to engage in speculation far beyond the narrow constitutional issues raised in the Complaint.

purpose of disadvantaging the group burdened by the law." *Romer*, 517 U.S. at 633; *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000); *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 369 (6th Cir. 2002) (citing *Vill. of Arlington Heights*, 429 U.S. at 266–68); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 535–36 (1973).

The Complaint adequately pleads that the Act was motivated by animus toward gays and lesbians. First, plaintiffs' allegations that the Act lacks any rational connection to any legitimate state interests create an inference of animus. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). If proven true, such allegations demonstrate that the law likely arises from "a bare . . . desire to harm a politically unpopular group," which is a constitutionally impermissible objective. *Equal. Found.*, 128 F.3d at 300; *Romer*, 517 U.S. at 634; *Moreno,* 413 U.S. at 534. In addition, Plaintiffs allege specific facts demonstrating that the Act was motivated by animus. The Act's title and plain language, as well as the historical background and sequence of events leading up to the passage of the Act demonstrate that the law is specifically intended to disadvantage gay and lesbian families. (*Id.* ¶¶ 61–69, 73, 76) The Act only prevents gay and lesbian couples from accessing family health benefits. (*Id.* ¶¶ 74–76, 82) Further, legislators' statements and the legislative analysis of the statute demonstrate hostility toward gay and lesbian families and their receipt of family benefits (*id.* ¶ 77 (quoting Rep. Pete Lund referring to domestic partner benefits as "an absolute abomination")); mischaracterize domestic partner benefits as "illegal" (*id.* ¶ 78); and display a specific intent to target "same-sex partners" (*id.* ¶ 79).[13] These specific factual allegations of animus are sufficient to defeat a motion to dismiss.

---

[13] Defendant's assertion that such "individual statements of a handful of legislators are not reflective of the Legislature's intent as a whole" (MTD at 25) is an argument that both is incorrect as a matter of law, *see City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194–95 (2003), and cannot be resolved in the State's favor at the pleading stage.

### B. The Complaint Adequately Pleads A Violation Of Plaintiffs' Substantive Due Process Rights.

The Due Process Clause "forbids the government to infringe fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg,* 521 U.S. 702, 720–21 (1997). The Sixth Circuit has held that "a plaintiff adequately alleges a substantive due process claim where the plaintiff pleads that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006). Plaintiffs have done so here. (Am. Compl. ¶¶ 119–23)

Plaintiffs assert a fundamental right to form and sustain intimate relationships, including the freedom to conduct a long-term committed relationship with a same-sex partner. (*Id.* ¶ 120); *see generally Lawrence v. Texas*, 539 U.S. 558, 578 (2003). The Act's removal of Plaintiffs' domestic partner health insurance benefits burdens that fundamental right by effectively penalizing its exercise. (Am. Compl. ¶¶ 121–22); *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

Defendant argues without basis that Plaintiffs' Complaint asserts that public employees have a fundamental right to health care. (MTD at 17) Not true. The only fundamental right Plaintiffs assert is the right to form and sustain intimate relationships. Defendant concedes this is a fundamental right. (*Id.*) The Supreme Court has affirmed that same-sex relationships implicate this fundamental right. *Lawrence v. Texas*, 539 U.S. 558, 588 (2003); *see also Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 942 (6th Cir. 2004) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). Plaintiffs assert that the State's ban on such benefits, voluntarily offered by employers, burdens their exercise of their fundamental right to be in a relationship with their same-sex partners. For "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number

of reasons . . . . [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests[.]"[14] *Perry v. Sinderman*, 408 U.S. 593, 597 (1972); *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 321 (6th Cir. 1998).

Defendant claims that the Act does not infringe upon Plaintiffs' fundamental right to intimate association because Plaintiffs "are free to maintain the same committed relationships that they had both before and during the time they were provided with domestic partner benefits." (MTD at 18) But governmental action need not require the dissolution of Plaintiffs' relationships in order to burden their constitutional rights. *See Adkins v. Bd. of Educ. of Magoffin Cnty.*, 982 F.2d 952, 956 (6th Cir. 1993) ("[I]t is not necessary that the government act require the abandonment or dissolution of a marriage relationship as the price for retaining public employment. The right of association is violated if the action constitutes an 'undue intrusion' by the state into the marriage relationship." (citing *Roberts*, 468 U.S. at 618–19)). Even if the Act does not completely bar Plaintiffs from exercising their right to intimate association, barring benefits solely because Plaintiffs exercise that right creates an impermissible burden.

---

[14] Defendant's citation to the Supreme Court's First Amendment decision in *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009) for the principle that "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right" is misplaced. Plaintiffs do not seek a "subsidy" of the exercise of their fundamental rights; rather, they seek to enjoin a law that deprives them of benefits that were freely extended to them, yet permits employers to continue extending similar benefits to married employees and their partners. Plaintiffs' benefits are not a *subsidy*, as that term is used in the First Amendment context; rather, the Act is a *penalty* directed explicitly at gay and lesbian employees. Further, the Supreme Court's holding in *Ysursa* explicitly turned on the fact that Idaho's ban on political payroll deductions "applies to all organizations…, applies regardless of viewpoint or message [and] does not single out any candidates or issues." 555 U.S. at 361 n.3 ("If the ban is not enforced evenhandedly, plaintiffs are free to bring an as-applied challenge."). Thus, nothing in *Ysursa* supports Defendant's position that the legislature can, consistent with the Due Process Clause, single out one group of employees and their life partners and burden their exercise of the fundamental right to intimate association. *See Wisc. Educ. Ass'n Council v. Walker*, 824 F. Supp. 2d 856, 870, 872 (W.D. Wis. 2012) (distinguishing *Ysursa*, holding that provision barring automatic deduction of public employee dues for certain unions, but allowing such deductions for other unions, violated First Amendment as well as Equal Protection Clause).

Since the Act infringes on fundamental liberty rights, it can be upheld only if it "furthers a compelling state interest, and is narrowly drawn to further that state interest." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998). Defendant does not even attempt to argue that the Act furthers a "compelling state interest," insisting that the State need only provide a rational basis for the law. (MTD at 19) Even if rational basis were the applicable standard, the Act would fail. In the Sixth Circuit, when the only motivation for governmental employment decisions is to target and burden the employee's exercise of fundamental rights, "then regardless of the level of scrutiny applied, such action is unconstitutional. This kind of adverse employment action flunks even the rational basis test." *Montgomery v. Carr*, 101 F.3d 1117, 1127 (6th Cir. 1996). Defendant's motion to dismiss Plaintiffs' due process claims should thus be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Corrected Motion to Dismiss.

Dated: June 12, 2012

Respectfully submitted,

s/ Amy E. Crawford
Michael J. Steinberg (P43085)
Jay D. Kaplan (P38197)
Kary L. Moss (P49759)
American Civil Liberties Union Fund of Michigan
2966 Woodward Avenue
Detroit, Michigan 28201
(313) 578-6814

John A. Knight
American Civil Liberties Union Foundation
180 N. Michigan, 2300
Chicago, Illinois 60601
(312) 201-9740

Amanda C. Goad (admission pending)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549- 2627

Donna M. Welch, P.C. (admission pending)
Bradley H. Weidenhammer (admission pending)
Amy E. Crawford (admission pending)
Kirkland & Ellis, LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000

*Attorneys for Plaintiffs Theresa Bassett, Carol Kennedy, Peter Ways, Joe Breakey, JoLinda Jach, Barbara Ramber, Doak Bloss, Gerardo Ascheri, Denise Miller, and Michelle Johnson*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of June, 2012, a true copy of *Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss* was delivered by electronic filing to:

Margaret A. Nelson (P30342)
Mark E. Donnelly (P39281)
Attorneys for Defendant
Michigan Department of Attorney General
Public Employment, Elections & Tort Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
*Attorneys for Defendant*

Debra K. Lefler