UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA BASSETT and CAROL
KENNEDY, PETER WAYS and JOE
BREAKEY, JOLINDA JACH and
BARBARA RAMBER, DOAK
BLOSS and GERARDO ASCHERI,
DENISE MILLER and MICHELLE
JOHNSON,

      Plaintiffs,

vs.

RICHARD SNYDER, in his official
capacity as Governor of the State of
Michigan,

      Defendant.
_____/

Case No. 2:12-cv-10038-DML-MJH

Hon. David M. Lawson
Mag. Michael J. Hluchaniuk

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Public Act 297 discriminates against Plaintiffs based on sexual orientation and does not rationally relate to any legitimate governmental interest; Defendant's opposition to Plaintiffs' summary judgment motion fails to show otherwise.

## ARGUMENT

I.   THE ACT DENIES PLAINTIFFS EQUAL PROTECTION.

A.   The Act Targets Plaintiffs Because Of Their Sexual Orientation.

Defendant argues that the Act is not discriminatory, because "[i]t excludes all domestic partners, same-sex or opposite sex, in committed or platonic relationships." (Def.'s Br. at 2.) Defendant's argument that the Act denies benefits to same-sex roommates misses the point, (Def.'s Br. at 6) since roommates are not "domestic partners" as they were defined in *National Pride at Work, Inc. v. Governor of Michigan*, 748 N.W.2d 524, 531-32, 536-37 (Mich. 2008) (domestic partnerships were "unions similar to marriage"). Nor are roommates similarly situated to married couples and the other family members the Act favors.[1] In contrast, Plaintiffs are in committed, intimate, and financially interdependent relationships comparable to marriage. (*See* Pls.' Br. ISO SJ at 13, nn. 9, 10.)

---

[1] In any event, roommates are unlikely to qualify under the financial interdependence criteria many local governments employ. *See* Ex. C to Pls.' Mot. for SJ (Ann Arbor Public Schools requires OQAs to be financially interdependent, proven by a "joint bank account, joint home ownership or other documented proof."); Ex. D to Pls.' Mot. for SJ (Ingham County requires proof of financial interdependence through, for example, joint ownership of a primary residence).

1

Additionally, the legislative history and the title of the Act show that it was passed to deny health insurance to same-sex domestic partners, not to ensure that roommates have no access to those benefits. (*Id.* at 23-25.)

Defendant also argues that Plaintiffs' claim is based on the discriminatory nature of Michigan's marriage law, which Plaintiffs have not challenged and which is presumptively constitutional. (Def.'s Br. at 6.) However, a plaintiff may challenge a law's discriminatory classification drawn from another law. *Johnson v. New York*, 49 F.3d 75, 78 (2d Cir. 1995) (state had to independently defend an age-based classification for security guards even though it had adopted the classification from a military context); *see also Diaz v. Brewer,* 656 F.3d 1008 (9th Cir. 2011), *cert. denied*, 133 S. Ct. 2884 (2013).

Finally, Defendant disputes Plaintiffs' claim that the broad range of family members who are eligible for benefits under the Act evidences its discriminatory nature, because the Act "recognizes and supports a family or dependent relationship recognized by law." (Def.'s Br. at 7.) Defendant's argument that he may deny benefits to same-sex couples because their relationships are disadvantaged by Michigan's marriage and intestacy laws is circular. Absent an independent reason for the classification, its usage for "the purpose of disadvantaging the group burdened by the law," *Romer v. Evans*, 517 U.S. 620,

2

633 (1996), violates equal protection.[2]

### B. There Is No Rational Basis For The Act.

Defendant wrongly states that "Plaintiffs' argument rests on one principle [sic] theory, [that] the State has not provided evidence demonstrating either a direct or indirect costs savings" and "[a]ny cost savings" are "offset by potential losses … or so minimal as to be insignificant." (Def.'s Br. at 9.) In fact, Plaintiffs have made several cost arguments, (Pls.' Br. ISO SJ at 19-21), including that the State may not "protect the public fisc by drawing an invidious distinction between classes of its citizens." *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 263 (1974).

The testimony of Defendant's expert Dr. Price fails to provide any evidence of cost savings from the Act. (*See* Pls.' Br. ISO SJ at 20-21; Pls.' Mot. to Exclude Test. of Joseph Price) And the problems with his cited data and studies are much more serious than their failure to be "perfectly aligned or organized to capture the specific categories suggested in Plaintiffs' inquiry." (Def.'s Br. at 9.) Dr. Price opined that the Act will save money because offering OQA benefits encourages

---

[2] Defendant asserts that "the United States Supreme Court has applied rational basis review to hold a law unconstitutional only when the 'challenged legislation inhibits personal relationships.'" (Def.'s Br. at 8, citing *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring).). But Justice O'Connor wrote that "[w]hen a law exhibits such a desire to harm a politically unpopular group, we have applied a more searching form of rational basis review" and that "[w]e have been *most likely* to apply rational basis review to hold a law unconstitutional under the Equal Protection Clause where, as here, the challenged legislation inhibits personal relationships." *Id.* (emphasis added).

3

people to cohabit rather than marry. (Price Rpt. ¶¶ 1, 42 (Ex. 14 to Pls.' Mot. for SJ, dep ex. 1)).) He testified that the relevant classes to compare are cohabiting couples and married couples. (Price Dep. Tr. at 139:7-12, 134:21-135:1, 137:15-138:2 (Ex. 14 to Pls.' Mot. for SJ).) But even if Dr. Price's testimony showed some cost savings from encouraging different-sex cohabiting couples to marry, his testimony has no rational connection to the denial of health benefits to Plaintiff couples, who have long been denied the ability to marry or have their out-of-state marriages recognized in Michigan.[3]

Defendant claims that "Dr. Price's opinion is more grounded in data than [Plaintiffs' expert] Dr. Badgett's because she "provides no actual loss figure." (Def.'s Br. at 10.) But Dr. Price made no effort to quantify the benefits, costs or the net benefits or losses from the Act, even though he opined that the Act resulted in a net economic benefit to the state. (Price Dep. Tr. at 218:22-219:8 (Ex. 14 to Pls.' Mot. for SJ).) Dr. Price did not look at cost data from the local employers affected by the Act, (Price Dep. at 90-91 (Ex. K to Pls.' Resp. to Def.'s Mot. to Exclude Test. of M.V. Lee Badgett, Ph.D.)), failed to look at data relevant to his opinions regarding the economic impact on the state of incentivizing cohabiting couples to

---

[3] Michigan's ban on marriage for same-sex couples was struck down in *DeBoer v. Snyder*, No. 12-CV-10285, 2014 WL 1100794 (E.D. Mich. Mar. 21, 2014), but Defendant Snyder is appealing that ruling and the Sixth Circuit has stayed its effect. Order, *Snyder v. DeBoer*, No. 14-1341 (6th Cir. Mar. 22, 2014).

4

marry, and failed to consider any potential costs. (Pls.' Mot. to Exclude Test. of Joseph Price at 7-19.) In contrast, Dr. Badgett analyzed data relevant to her opinions, including information from local employers actually affected by the Act. (Pls.' Resp. to Def.'s Mot. to Exclude Test. of M.V. Lee Badgett, Ph.D. at 2-3.)

With respect to cost savings, Defendant alleges generally that "cost savings to the State or its local government[s] are not so inconsequential" and references the "fiscal stability of its local governments." (Def.'s Br. at 11.) But he fails to support those claims with any facts regarding the cost savings to local employers or any connection between the provision of OQA benefits and the fiscal instability of any local employer. Dr. Price did not challenge either Dr. Badgett's testimony or the declarations and testimony of local employers about the low costs to local employers who provide OQA benefits. (Price Dep. Tr. at 90-91 (Ex. K to Pls.' Resp. to Def.'s Mot. to Exclude Test. of M.V. Lee Badgett, Ph.D.).)

Finally, *Diaz* did not apply a "*de mini*[*mi*]*s* standard" as Defendant claims, (Def.'s Br. at 11), but rather found that cost savings cannot provide a rational basis for a discriminatory classification. *Diaz*, 656 F.3d at 1014 ("the savings depend upon distinguishing between homosexual and heterosexual employees, similarly situated, and such a distinction cannot survive rational basis review"); *see also Bassett v. Snyder*, 951 F. Supp. 2d 939, 967-68 (E.D. Mich. 2013).

The Act was motivated by impermissible purpose to discriminate against

5

same-sex couples, and Defendant's efforts to show otherwise are unsuccessful. First, Defendant claims incorrectly that "the Act excludes a wide array of familial members outside of what Plaintiffs term the 'nuclear' family." (Def.'s Br. at 13.) In fact, the Act allows benefits to be provided to any family member who could inherit from the employee under Michigan's intestate succession laws. M.C.L. § 15.583(1)(3). Defendant wrongly asserts that the history behind the passage of the Act "does not reveal any acts taken with a discriminatory purpose, let alone numerous acts." (Def.'s Br. at 14.) But a history of denying marriage, limited domestic partner benefits, and OQA benefits to same-sex couples cannot be read any other way. Comparing the legislative history of the Act to that of the Defense of Marriage Act described in *United States v. Windsor*, 133 S. Ct. 2675 (2013), supports Plaintiffs' argument that the Act was motivated by an impermissible purpose to injure same-sex couples. Both histories show that disfavoring same-sex couples "was more than an incidental effect" of the statute. *Id.* at 2693.

## II. THIS COURT SHOULD PERMANENTLY ENJOIN ENFORCEMENT OF THE ACT.

Defendant argues that a permanent injunction here would be duplicative. (Def.'s Br. at 19 (citing *Putnam v. Davies*, 960 F. Supp. 1268 (S.D. Ohio 1997)).) But "declaratory relief is alternative or cumulative and not exclusive or extraordinary." Advisory Committee Notes to Fed. R. Civ. P. 57. Declaratory judgment is "'an *alternative* [remedy] to injunctions against state officials,'

particularly in situations where a more intrusive injunction would not be appropriate," *Roark v. South Iron R-1 Sch. Dist.*, 573 F.3d 556, 562 (8th Cir. 2009) (citing *Steffel v. Thompson*, 415 U.S. 452, 467 (1974)), such as cases "involv[ing] anticipatory federal adjudication of the constitutionality of a state criminal statute." *Steffel*, 415 U.S. at 467. No special circumstances of the sort present in *Steffel* or *Putman*, 960 F. Supp. at 1270-71 (denying request for injunction against enforcement of criminal seizure statute that federal and state courts had declared unconstitutional), exist here. This Court should grant declaratory relief and a permanent injunction. (*See also* Pls.' Br. ISO SJ at 32-35.)

Dated: March 24, 2014                    Respectfully submitted,

                                         /s/ John A. Knight

Michael J. Steinberg (P43085)            John A. Knight
Jay D. Kaplan (P38197)                   Attorney for Plaintiffs
Kary L. Moss (P49759)                    American Civil Liberties Union
Attorneys for Plaintiffs                    Foundation
American Civil Liberties Union Fund      180 N. Michigan Ave., Ste. 2300
   of Michigan                           Chicago, IL 60601
2966 Woodward Ave.                       (312) 201-9740
Detroit, MI 28201                        jaknight@aclu.org
(313) 578-6814
msteinberg@aclumich.org
kaplan@aclumich.org
kmoss@aclumich.org

7


<p></p>


## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2014, I electronically filed the foregoing REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ John A. Knight
John A. Knight
Attorney for Plaintiffs
American Civil Liberties Union
   Foundation
180 N. Michigan Ave., Ste. 2300
Chicago, IL 60601
(312) 201-9740
jaknight@aclu.org